# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES TRACK & FIELD** | * | **Civil Action No.:** |
| **AND CROSS COUNTRY COACHES** | * | **2:24-cv-2736-WJC-JVM** |
| **ASSOCIATION** | * | |
|       **Plaintiff,** | * | |
| | * | |
| **VERSUS** | * | **District Judge Crain** |
| | * | |
| **FLOSPORTS, INC. and** | * | **Magistrate Judge van Meerveld** |
| **DIRECTATHLETICS, INC.** | * | |
|       **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**USTFCCCA'S OBJECTIONS AND RESPONSES TO DEFENDANTS'**
**FIRST SET OF REQUESTS FOR ADMISSIONS, INTERROGATORIES,**
**AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff, the United States Track & Field and Cross Country Coaches Association ("USTFCCCA"), responds as follows to the Requests for Admission, Interrogatories and Requests for Production propounded by Defendants, Flosports, Inc. and DirectAthletics, Inc.

**GENERAL OBJECTIONS**

USTFCCCA objects generally to Defendants' Requests for Admissions, Interrogatories, and Requests for Production of Documents to the extent they seek information or documents that are not relevant to the subject matter of this action or that are not reasonably calculated to lead to the discovery of admissible evidence. USTFCCCA further objects to the extent the requests are overly broad, unduly burdensome, oppressive, or not proportional to the needs of this case.

USTFCCCA objects to Defendants' requests to the extent they seek information or documents protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable privilege or immunity. USTFCCCA's responses herein are made without

waiving and while expressly preserving all such applicable privileges, immunities, and objections.

USTFCCCA objects to Defendants' requests to the extent they seek information or documents comprising or containing proprietary business information, trade secrets, confidential commercial information, or competitively sensitive data. USTFCCCA will not produce such information absent the entry of an appropriate protective order by the Court governing the use, handling, and dissemination of confidential materials. USTFCCCA reserves all rights to withhold responsive materials on this basis pending the negotiation and entry of such an order.

USTFCCCA objects to the definitions and instructions contained in Defendants' discovery requests to the extent they are inconsistent with or purport to impose obligations beyond those required by the Federal Rules of Civil Procedure. In particular, USTFCCCA objects to Instruction 9, which seeks information and documents from January 1, 2005 through the present, as overly broad, unduly burdensome, and disproportionate to the needs of the case. The claims at issue concern events beginning in 2009 when USTFCCCA and DA began their collaborative relationship. Therefore, discovery of information or documents from the time period prior to 2009 is not relevant to any claim or defense in this action.

These general objections apply to each specific request for admission, interrogatory, and request for production and are incorporated by reference into each specific response. The fact that USTFCCCA has responded to any particular request shall not be construed as a waiver of these general objections or any specific objection.

## RESPONSES TO REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:** Please admit that the Association and/or its members were using software developed by DA to track meet results prior to the Association's relationship with DA in 2009.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous with respect to the term "using software developed by DA" and "the Association's relationship with DA." USTFCCCA further objects to this request to the extent it assumes facts not in evidence.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: USTFCCCA denies that it had any formal relationship with DA prior to 2009. Regarding whether some individual USTFCCCA member coaches used DA's software for individual meet management prior to 2009, USTFCCCA lacks sufficient information to admit or deny this allegation since it pertains to individual members' alleged conduct from over 15 years ago.

**REQUEST FOR ADMISSION NO. 2:** Please admit that DA created software that facilitated track and field meet registration by collecting, storing, and organizing meet results for collegiate track and field and cross-country conferences and competitions prior to 2009.

**RESPONSE:** USTFCCCA objects to this request to the extent it is vague and ambiguous regarding "software" and "prior to 2009." USTFCCCA further objects to this request to the extent it seeks admission of Defendants' legal conclusions regarding DA's copyright ownership.

Subject to and without waiving the foregoing objections, USTFCCCA admits that DA offered some form of meet management software prior to 2009, but denies that such software was TFRRS or that such software had the comprehensive functionality, data architecture,

organizational structure, or purpose that TFRRS was designed to achieve through the

collaborative efforts of USTFCCCA and DA.

**REQUEST FOR ADMISSION NO. 3**: Please admit that the Association did not author any

lines of computer code incorporated into TFRRS's back-end software.

**RESPONSE:** USTFCCCA objects to this request as misstating the legal standard for copyright

co-authorship. The Copyright Act protects original works of authorship established through

independently copyrightable creative contributions that are fixed in a tangible medium, which for

a software program is not limited to computer code. USTFCCCA objects to this request to the

extent it seeks admission of Defendants' legal conclusions.

Subject to and without waiving the foregoing objections, USTFCCCA admits that it did

not personally write lines of computer code, but states that this fact is legally irrelevant to

copyright co-authorship. USTFCCCA's creative contributions—including data architecture,

organizational structures, taxonomies, encoding rules, validation protocols, and functional

specifications—constitute independently copyrightable expression that was fixed in tangible

form through implementation in TFRRS.

**REQUEST FOR ADMISSION NO. 4:** Please admit that the Association did not author any

lines of computer code incorporated into TFRRS's front-end user interface.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to

Request for Admission No. 3. The request misstates the legal standard for copyright co-

authorship and seeks admission of Defendants' legal conclusions.

Subject to and without waiving the foregoing objections, USTFCCCA admits that it did

not personally write computer code for the user interface, but states that this fact is legally

irrelevant. USTFCCCA created the design specifications, organizational structures, display

formats, and user interface concepts that define TFRRS's front-end presentation, which constitute independently copyrightable creative expression.

**REQUEST FOR ADMISSION NO. 5:** Please admit that the Association did not author any lines of code for any encoding rules, selections and arrangements, or taxonomies incorporated into TFRRS's computer codebase.

**RESPONSE:** USTFCCCA objects to this request as compound and as misstating the distinction between creative contribution and code implementation. This request improperly conflates "encoding rules, selections and arrangements, or taxonomies" (which are creative contributions) with "lines of code" (which are implementation). USTFCCCA objects to this request to the extent it seeks admission of Defendants' legal conclusions.

Subject to and without waiving the foregoing objections, USTFCCCA denies this request. USTFCCCA created or materially contributed to the encoding rules, selections and arrangements, and taxonomies that were implemented into TFRRS. The fact that DA translated USTFCCCA's creative specifications into computer code does not negate USTFCCCA's authorship of the underlying creative expression.

**REQUEST FOR ADMISSION NO. 6:** Please admit that there is no written agreement between the Association and DA or FloSports evidencing that they are co-authors or co-creators of TFRRS.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks admission of Defendants' legal conclusions. Copyright law does not require a written agreement to establish joint authorship. Joint authorship can be proven through the parties' course of dealing, collaborative conduct, and mutual intent to create a unified work, as demonstrated through circumstantial evidence.

Subject to and without waiving the foregoing objections, USTFCCCA admits that there is no single written agreement titled "Co-Authorship Agreement," but states that the parties' collaborative relationship, course of dealing over fifteen years, communications, and conduct all evidence their mutual intent to be co-authors. Additionally, public statements, press releases, and institutional acknowledgments repeatedly identified TFRRS as a USTFCCCA product or joint effort. Finally, Defendants proposed partnership agreements to USTFCCCA in October 2023, including an "Exclusive Technology/Media Partnership" Agreement and an "Exclusive Technology Partnership" Agreement that recognized USTFCCCA and Flosports as partners in "technology, streaming, and media" and provided specific rights to USTFCCCA concerning TFRRS administrative access and promotional branding, making it clear that Defendants recognized USTFCCCA as a partner in and co-owner of their primary technology asset for the track & field market.

**REQUEST FOR ADMISSION NO. 7:** Please admit that there is no oral agreement between the Association and DA or FloSports evidencing any intent that they be co-authors or co-creators of TFRRS.

**RESPONSE:** USTFCCCA objects to this request as misstating the law and seeking admission of Defendants' legal conclusions. Joint authorship intent can be demonstrated through the parties' conduct and course of dealing, not merely through explicit oral declarations of co-authorship.

Subject to and without waiving the foregoing objections, USTFCCCA denies this request. The parties' collaborative relationship, mutual contributions, shared decision-making, and fifteen-year course of dealing demonstrate their mutual intent to create a joint work, even in the absence of a formal oral agreement using the specific terminology "co-authors." Further, see

Response to Request for Admission No. 6 regarding the partnership agreements proposed by

Defendants in October 2023.

**REQUEST FOR ADMISSION NO. 8**: Please admit that prior to November 2023, the

Association never asserted in writing to DA or FloSports that it was a co-author or co-owner of

TFRRS.

**RESPONSE**: USTFCCCA objects to this request to the extent it is vague and ambiguous

regarding "asserted in writing" and to the extent it seeks admission of a legal conclusion.

USTFCCCA objects to this request to the extent it assumes that formal assertion of co-ownership

is required to establish co-authorship, which is incorrect as a matter of law.

Subject to and without waiving the foregoing objections, USTFCCCA states there was no

dispute between the parties regarding their collaborative relationship or USTFCCCA's ownership

interest in TFRRS until October 2023, when Sam Seemes verbally communicated to Dave

Stelnik USTFCCCA's disagreement over DA's decision to include TFRRS in the Flosports

acquisition without USTFCCCA's knowledge or consent. The parties operated for fifteen years

under a mutual understanding of their joint enterprise. USTFCCCA's lack of a formal claim to

ownership of TFRRS earlier reflects the absence of any dispute, not the absence of ownership

rights.

**REQUEST FOR ADMISSION NO. 9**: Please admit that the Association has no internal

document created prior to 2023 that states the Association is a joint author of TFRRS.

**RESPONSE**: USTFCCCA objects to this request to the extent it seeks admission of a legal

conclusion and to the extent it is overly broad and vague regarding "internal document" and

"states the Association is a joint author." USTFCCCA objects to this request to the extent it

assumes that formal declarations of joint authorship are required to establish co-ownership, which is incorrect as a matter of law.

Subject to and without waiving the foregoing objections, USTFCCCA denies this request. USTFCCCA possesses numerous internal documents from 2009 through 2023 that identify TFRRS as a USTFCCCA product, describe USTFCCCA's creative contributions, document collaborative development efforts, and reflect USTFCCCA's proprietary interest in TFRRS. These documents demonstrate USTFCCCA's understanding of its authorship role even if they do not use the precise legal terminology "joint author."

**REQUEST FOR ADMISSION NO. 10:** Please admit that the Association has never received payment from FloSports or DA for the commercial exploitation of TFRRS.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks admission of a legal conclusion. The absence of direct monetary payments does not negate copyright ownership. Joint authors often derive value from their co-owned works through means other than direct revenue sharing, including enhanced reputation, member services, and institutional relationships.

Subject to and without waiving the foregoing objections, USTFCCCA admits that it has not received direct monetary payments from DA or FloSports, and in fact, does not believe that any person or entity was receiving any direct monetary benefit from TFRRS prior to Flosports' acquisition of DA. However, USTFCCCA derived substantial non-monetary benefits from TFRRS, including fulfillment of its organizational mission, enhanced services to member coaches, strengthened relationships with the NCAA and member institutions, and improved competitive positioning. Moreover, Defendants offered sharing of advertising sales revenue to USTFCCCA in October 2023 as a term of an unconsummated "Exclusive Technology/Media Partnership" and incentive payments based on the market share of Defendant's MeetPro and Live

Results software. The collaborative relationship further provided mutual benefits wherein DA

received legitimacy and market access through USTFCCCA's involvement, including, but not

limited to, its obtaining of NCAA endorsement of TFRRS, and used such legitimacy and access

to develop its meet registration business. Another example of the benefits conferred to DA was

USTFCCCA's recognition of DA as an official sponsor from 2012-2022—a sponsorship valued

at approximately $12,000 per year—despite the fact that DA paid nothing for this benefit.

**REQUEST FOR ADMISSION NO. 11:** Please admit that the Association has never requested

payment from DA or FloSports for the commercial exploitation of TFRRS.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks admission of a legal

conclusion. The absence of payment requests does not negate copyright ownership.

Subject to and without waiving the foregoing objections, USTFCCCA states that for

fifteen years, the parties operated under a collaborative relationship where USTFCCCA derived

value through non-monetary benefits as described in the Response to Request for Admission No.

10. USTFCCCA did not request monetary payments during this period because the relationship

was mutually beneficial and non-adversarial. USTFCCCA's assertion of ownership rights

became necessary only after FloSports acquired DA and unilaterally terminated the collaborative

relationship, fundamentally altering the nature of the parties' arrangement.

**REQUEST FOR ADMISSION NO. 12:** Please admit that the Association signed the attached

July 1, 2016 Data Use and Non-Disclosure Agreement with DirectAthletics.

**RESPONSE:** USTFCCCA admits that it executed a Data Use and Non-Disclosure Agreement

dated July 1, 2016. That agreement is the best evidence of its own contents.

**REQUEST FOR ADMISSION NO. 13:** Please admit that the Data Use and Non-Disclosure Agreement states that the Association shall not acquire any intellectual property rights, and that any suggestions by the Association incorporated into DA's proprietary information remain the property of DA.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks admission of Defendants' characterization and legal interpretation of the Data Use Agreement. The agreement is the best evidence of its own contents.

Subject to and without waiving the foregoing objections, USTFCCCA states that the Data Use Agreement contains language regarding intellectual property rights, but that agreement must be interpreted in its full context. The Data Use Agreement pertains specifically and exclusively to USTFCCCA's use of cross-country results data for analyzing NCAA selection procedures. The agreement's limited scope does not extend to USTFCCCA's pre-existing copyright ownership claims to the TFRRS system. Additionally, the agreement's language does not encompass or waive USTFCCCA's substantial creative contributions that pre-dated the agreement by seven years. Any ambiguity in the agreement must be construed against its drafter, DA.

**REQUEST FOR ADMISSION NO. 14:** Please admit that the Association announced a "landmark" partnership with Athletic as its "exclusive technology partner" on November 16, 2023.

**RESPONSE:** USTFCCCA admits that it announced a partnership with Athletic in November 2023. USTFCCCA objects to Defendants' characterization of specific quoted language and refers to the actual announcement for the best evidence of its contents.

**REQUEST FOR ADMISSION NO. 15:** Please admit that the Association receives a portion of processing fees assessed on meet registration payments made through Athletic's website.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks disclosure of confidential commercial information regarding the terms of USTFCCCA's partnership with Athletic. USTFCCCA objects to this request to the extent it is not relevant to any claim or defense in this action or reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, USTFCCCA states that it receives certain financial benefits from its partnership with Athletic, the specific terms of which constitute confidential commercial information that USTFCCCA will not voluntarily disclose.

**REQUEST FOR ADMISSION NO. 16:** Please admit that the Association receives financial benefits tied to Athletic's commercial growth under the Athletic Partnership.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to Request for Admission No. 15.

Subject to and without waiving the foregoing objections, USTFCCCA admits that its partnership with Athletic includes financial arrangements that may be affected by Athletic's commercial performance, the specific terms of which are confidential commercial information that USTFCCCA will not voluntarily disclose.

**REQUEST FOR ADMISSION NO. 17:** Please admit that the Association terminated its relationship with DA and FloSports after entering into the exclusive deal with Athletic.

**RESPONSE:** USTFCCCA objects to this request as misstating the facts and seeking admission of Defendants' inaccurate characterization of events. USTFCCCA objects to the use of the term "terminated" as vague and ambiguous.

USTFCCCA denies this request as framed. FloSports and DA terminated USTFCCCA's enhanced access to TFRRS functionality following USTFCCCA's announcement of its Athletic partnership. USTFCCCA did not "terminate" its relationship with Defendants; rather, Defendants unilaterally altered the parties' fifteen-year collaborative arrangement by divesting USTFCCCA's ownership rights in TFRRS in October-November 2023, and subsequently implementing the 2023 TFRRS security updates that eliminated USTFCCCA's access to data and functionality necessary for its rankings, awards, and member services.

**REQUEST FOR ADMISSION NO. 18:** Please admit that, in communications with Athletic, the Association represented or implied that it had the ability to provide Athletic with access to, interoperability with, or data from TFRRS.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous with respect to the terms "represented or implied," "ability to provide," "access to," "interoperability with," and "data from TFRRS." USTFCCCA objects to this request to the extent it is overly broad, calls for speculation, and seeks information regarding confidential business negotiations.

Subject to and without waiving the foregoing objections, USTFCCCA denies this request as framed. USTFCCCA has discussed its legitimate ownership rights in TFRRS with Athletic. Any representations USTFCCCA made were based on its good faith belief in its co-ownership of TFRRS and its reasonable expectation that it could continue to access and use TFRRS data consistent with fifteen years of practice.

**REQUEST FOR ADMISSION NO. 19:** Please admit that, prior to entering the Athletic

Partnership, the Association represented to Athletic that the Association had rights, control, or

authority over TFRRS data or functionality.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to

Request for Admission No. 18.

Subject to and without waiving the foregoing objections, USTFCCCA states that it has

communicated to Athletic its good faith belief in its co-ownership rights in TFRRS based on

fifteen years of collaborative development and mutual understanding with DA. USTFCCCA

reasonably believed, based on the parties' course of dealing, that it had rights to access and use

TFRRS data and functionality, and continues to maintain such belief.

**REQUEST FOR ADMISSION NO. 20:** Admit that the Association represented to Athletic that

it owned, co-owned, or controlled intellectual property rights of TFRRS.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to

Requests for Admission Nos. 18 and 19.

Subject to and without waiving the foregoing objections, USTFCCCA admits that it

communicated to Athletic its good faith belief that it is a co-owner of TFRRS based on its

substantial creative contributions and fifteen-year collaborative relationship with DA.

**REQUEST FOR ADMISSION NO. 21:** Please admit that the TFRRS Terms of Use prohibit

downloading, selling, redistributing, transferring, or otherwise exploiting TFRRS or

DirectAthletics content without prior written permission.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks admission of Defendants'

interpretation of the TFRRS Terms of Use. The Terms of Use are the best evidence of their own

contents.

Subject to and without waiving the foregoing objections, USTFCCCA admits that the TFRRS Terms of Use contain provisions regarding use of the website and its contents. However, as a co-owner of TFRRS, USTFCCCA is not bound by unilateral terms of use imposed by DA/FloSports without USTFCCCA's consent, since a co-owner cannot restrict another co-owner's rights to the jointly owned work through unilateral declarations.

Further, as a co-creator and co-owner of TFRRS, USTFCCCA's relationship with TFRRS is fundamentally different from that of an ordinary end-user. Any terms of use applicable to general website visitors do not and cannot restrict USTFCCCA's ownership rights in the underlying copyrighted work. This view was specifically endorsed by District Judge Zainey in his ruling denying Defendants' Motion to Transfer Venue [R. Doc. 25, p. 6]: "The pivotal issue in the case is whether USTFCCCA is a co-owner of TFRRS. USTFCCCA's status as a co-author and co-owner of the system is not based on whether or not it actually uses the website, and therefore those claims do not arise out of or relate to USTFCCCA's use of the site. The same can be said of the antitrust claims."

**REQUEST FOR ADMISSION NO. 22:** Please admit that the Association agreed to the TFRRS Terms of Use when its account was created.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous regarding "agreed to the TFRRS Terms of Use" and "when its account was created." USTFCCCA objects to this request to the extent it assumes facts not in evidence.

Subject to and without waiving the foregoing objections, USTFCCCA denies the Request as stated for the same reasons stated in its Response to Request for Production No. 21.

**REQUEST FOR ADMISSION NO. 23:** Please admit that the Association has copied or transferred TFRRS roster or results data to Athletic.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous with respect to the terms "copied or transferred" and "roster or results data."

Subject to and without waiving the foregoing objections, USTFCCCA states that as a co-owner of TFRRS, it has the right to access and use TFRRS data. Any use of TFRRS data by USTFCCCA is within the scope of its ownership rights. To the extent USTFCCCA provided any data or information to Athletic, such actions were undertaken in good faith based on USTFCCCA's reasonable belief in its co-ownership rights.

**REQUEST FOR ADMISSION NO. 24:** Please admit that the Association did not obtain written consent from DA or FloSports to copy or transfer any TFRRS data to Athletic.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to Request for Admission No. 23.

Subject to and without waiving the foregoing objections, USTFCCCA states that as a co-owner of TFRRS, it does not require permission from DA or FloSports to exercise its ownership rights. USTFCCCA's use of TFRRS data is within the scope of its co-ownership rights and does not require consent from the other co-owner.

**REQUEST FOR ADMISSION NO. 25:** Please admit that the Association intended to download data from TFRRS and upload it onto Athletic's website.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous with respect to the terms "intended" and "data from TFRRS" and to the extent it calls for speculation about future conduct.

Subject to and without waiving the foregoing objections, USTFCCCA states that it explored various options for continuing to fulfill its mission of providing rankings, awards, and services to member coaches after Defendants terminated USTFCCCA's access to TFRRS functionality. Any actions USTFCCCA contemplated were based on its good faith belief in its co-ownership rights and its need to continue serving its members.

**REQUEST FOR ADMISSION NO. 26:** Please admit that the Association has access to the TFRRS website.

**RESPONSE:** USTFCCCA admits that it can view publicly available portions of the TFRRS website as a general internet user, but denies that it has the enhanced administrative access and data export functionality it had through the custom Amazon S3 bucket that it possessed throughout its fifteen-year collaborative relationship with DA, prior to FloSports' termination of that access in late 2023.

**REQUEST FOR ADMISSION NO. 27:** Please admit that the Association can view meet results on the TFRRS website.

**RESPONSE:** USTFCCCA admits that it can view individual meet results displayed on the publicly accessible portions of the TFRRS website, subject to the same limitations applicable to general internet users. However, USTFCCCA denies that it has the bulk data access, CSV export capability, and administrative functionality necessary to conduct the comprehensive data analysis required for USTFCCCA's rankings and awards programs.

**REQUEST FOR ADMISSION NO. 28:** Please admit that the Association can view the historical results of individual athletes on the TFRRS website.

**RESPONSE:** USTFCCCA admits that individual athlete results may be viewable through manual searches of the publicly accessible TFRRS website, subject to limitations. However, this

manual, athlete-by-athlete access is inadequate for USTFCCCA's organizational needs. Prior to FloSports' termination of USTFCCCA's enhanced access, USTFCCCA possessed bulk data export capabilities and unique athlete identifier systems that enabled comprehensive analysis across thousands of athletes—functionality that is no longer available to USTFCCCA due to unilateral removal of its access by Defendants.

**REQUEST FOR ADMISSION NO. 29:** Please admit that at least some TFRRS data downloaded by the Association was stored in systems not owned or controlled by the Association.

**RESPONSE:** USTFCCCA objects to this request as vague and ambiguous with respect to "systems not owned or controlled by the Association" and "TFRRS data downloaded by the Association." USTFCCCA objects to this request to the extent it assumes facts not in evidence.

Subject to and without waiving the foregoing objections, USTFCCCA lacks sufficient information to admit or deny this request. USTFCCCA may have used third-party hosting services, cloud storage providers, or software applications in the ordinary course of its operations. Any such use would be consistent with standard business practices and USTFCCCA's ownership rights in TFRRS.

**REQUEST FOR ADMISSION NO. 30:** Please admit that neither the Association nor any of its employees used TFRRS data for commercial purposes outside the scope permitted by the DUA and the TFRRS Terms of Use.

**RESPONSE:** USTFCCCA objects to this request as compound, confusing, and improperly phrased in the negative. USTFCCCA objects to the terms "commercial purposes" and "outside the scope permitted by the DUA and the TFRRS Terms of Use" as vague and ambiguous.

Subject to and without waiving the foregoing objections, USTFCCCA states that all uses of TFRRS data by USTFCCCA and its employees were within the scope of USTFCCCA's rights as a co-owner of TFRRS and its mission and a non-profit professional organization serving track and field and cross country coaches. As a co-owner of TFRRS, USTFCCCA's use of TFRRS data is not limited by the Data Use Agreement or Terms of Use in the manner Defendants suggest.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify each witness the Association may or will call at trial or any hearings in this case.

**RESPONSE:** USTFCCCA objects to this interrogatory as premature. Discovery is ongoing, and USTFCCCA's witness list has not been finalized. USTFCCCA has provided its disclosures required by Federal Rule of Civil Procedure 26(a)(3) and will supplement same at the appropriate time in accordance with the Court's scheduling order.

Subject to and without waiving the foregoing objection, USTFCCCA responds as follows: Individuals who may have knowledge relevant to this litigation include:

1) Sam Seemes, CEO of USTFCCCA;

2) Tom Lewis, Director and former employee of USTFCCCA;

3) Current and former USTFCCCA Board members;

4) Current and former USTFCCCA staff members involved in TFRRS development and usage;

5) Representatives of NCAA, NAIA, and NJCAA who communicated with USTFCCCA regarding TFRRS adoption and implementation;

6) Member coaches who used TFRRS and can testify regarding USTFCCCA's proprietary role;

7) David Stelnik, former representative of DirectAthletics;

8) Jason Kronstat, former representative of DirectAthletics;

9) Current and former representatives of FloSports; and

10) Current and former representatives of Athletic.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional witnesses are identified.

**INTERROGATORY NO. 2:** Please identify the person(s) who "originally conceptualized" TFRRS, the date it was conceptualized, and describe the circumstances and timeframe in which that idea was shared within the Association.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it is overly broad, vague, and ambiguous with respect to "originally conceptualized" and "that idea." USTFCCCA objects to this interrogatory to the extent it assumes that TFRRS was conceptualized by a single person at a single moment in time, when in fact TFRRS was developed through collaborative discussions among multiple USTFCCCA personnel over time.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 3:** In paragraph 19 of the Complaint, you describe software that DA developed prior to 2009. Please describe the Association's use of that software prior to 2009, including the time frame in which it began using DA's software, and describe the functions of the software used by the Association (e.g. meet registration, meet results reporting, meet results tracking, etc.).

**RESPONSE:** USTFCCCA objects to this interrogatory as based on an incorrect factual premise and seeking information not alleged in the Amended Complaint.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: USTFCCCA's Amended Complaint alleges that DA had developed basic meet management software prior to 2009, but that this pre-existing software was not TFRRS. The Amended Complaint alleges that TFRRS was created through the collaborative efforts of USTFCCCA and DA beginning in 2009, incorporating USTFCCCA's substantial creative contributions to transform DA's basic software into a comprehensive national results reporting and ranking system.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 4:** In paragraph 14 of the Complaint, you allege that "Since at least 2009, USTFCCCA and DA had a voluntary, productive, and mutually beneficial collaborative relationship regarding the joint management and improvement of TFRRS." Please identify the date that the relationship began, the Association representatives that initiated that relationship, and/or that were involved in negotiations, discussions, or agreements at the beginning of that relationship.

**RESPONSE:** USTFCCCA responds as follows: The collaborative relationship between USTFCCCA and DA began in approximately late 2008. The relationship was initiated and developed by USTFCCCA representatives including Sam Seemes (CEO) and Tom Lewis (Director and staff member), along with DA representatives including David Stelnik and Jason Kronstat. Initial discussions and negotiations occurred through emails, phone calls, and meetings during 2009, culminating in the public announcement of TFRRS in October 2009.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 5:** Describe the facts and circumstances relating to each of Your "substantial creative contributions to TFRRS," including but limited to the person(s) who made each such contribution and how and when each such contribution was communicated to Defendant(s), and how and when each such contribution was used and/or implemented into TFRRS' software and/or website.

**RESPONSE:** USTFCCCA objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case. This interrogatory seeks a comprehensive narrative of fifteen years of collaborative development involving hundreds of individual contributions, communications, and implementations. Compliance would require USTFCCCA to provide a complete developmental history of TFRRS, which is neither required nor feasible within the confines of an interrogatory response.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 6:** Identify each and every Document and/or record relating to the "audit results" shared with DA.

**RESPONSE:** USTFCCCA responds as follows: Documents relating to audit results shared with DA include email communications between USTFCCCA staff (including Tom Lewis) and DA representatives identifying data errors, discrepancies, and corrections needed in TFRRS; spreadsheets and reports documenting identified errors; and communications regarding implementation of corrections. Specific responsive documents will be produced in response to Defendants' document requests.

**INTERROGATORY NO. 7:** Identify each and every "encoding rule" referenced in the Complaint.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it is overly broad and seeks a level of technical detail that would require expert analysis to fully articulate. USTFCCCA objects to this interrogatory to the extent compliance would require USTFCCCA to provide information that may constitute trade secrets or proprietary information.

USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 8:** Identify and describe each and every display format and/or organizational structure that the Association alleges it created in paragraph 51 of the Complaint, including but not limited to the person(s) who participated in such creation and how, when, and by whom it was implemented into TFRRS' software and website.

**RESPONSE:** USTFCCCA objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 9:** Please identify each and every instance that DA recognized the Association as a co-creator or co-owner of TFRRS, including but not limited to whether each such acknowledgement was written or verbal, the date of each such acknowledgement, individual(s) who made such acknowledgement and to whom, and any and all Document(s) and/or record(s) reflecting or relating to each such acknowledgment.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it assumes that explicit verbal or written acknowledgments using the specific terminology "co-creator" or "co-owner" are required to establish joint authorship, which is incorrect as a matter of law. Joint authorship

can be demonstrated through the parties' course of dealing, collaborative conduct, and circumstantial evidence.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: DA's recognition of USTFCCCA's co-creator role is evidenced through:

1. **October 2009 Press Release:** USTFCCCA's press release announcing "the creation of" TFRRS, which DA did not object to or contradict, implicitly acknowledging USTFCCCA's creator role.]

2. **September 2014 Email from Jason Kronstat:** Kronstat explicitly acknowledged that MeetPro XC results were "based on Tom's design," directly recognizing USTFCCCA's creative contribution (written acknowledgment from Kronstat to USTFCCCA representatives).

3. **Course of Dealing:** Throughout fifteen years of collaboration (2009-2023), DA consistently treated USTFCCCA as a partner in TFRRS development, soliciting USTFCCCA's input on features, implementing USTFCCCA's specifications, and coordinating development priorities with USTFCCCA, evidencing DA's recognition of USTFCCCA's co-creator role.

4. **Public Representations:** NCAA and institutional materials (including NAIA manual) describe TFRRS as a product "of" USTFCCCA with DA as the "online provider," which DA was aware of and did not contradict.

5. **Collaborative Development Process:** DA's participation in regular collaborative calls, implementation of USTFCCCA's specifications, and consultation with USTFCCCA on development priorities throughout 2009-2023 constitute implicit recognition of USTFCCCA's co-creator role.

Documents evidencing DA's recognition include email communications between DA and USTFCCCA representatives (2009-2023), meeting notes from collaborative development sessions, and public materials describing TFRRS.

**INTERROGATORY NO. 10:** Please describe the facts and circumstances, including but limited to date(s), location(s), and individual(s) involved and/or present, relating to any of the Association's "efforts to obtain buy-in from NCAA Division I, II and III stakeholders" and "devise[] of and convince[] the NCAA to adopt" TFRRS as the mandatory reporting system for collegiate track and field.

**RESPONSE:** USTFCCCA responds as follows: USTFCCCA's efforts to obtain NCAA adoption of TFRRS occurred primarily in 2009-2010 and involved presentations to NCAA committees, written communications to NCAA, stakeholder outreach, and other actions by USTFCCCA. Individuals involved in these efforts included Sam Seemes, Tom Lewis, other USTFCCCA board members and staff, NCAA committee members and administrators, and conference representatives.

**INTERROGATORY NO. 11:** Identify all persons with knowledge of the Association's execution of the DUA, the purpose(s) for which data was provided, and any disclosures or copying of DUA-protected information.

**RESPONSE:** USTFCCCA responds as follows: Persons with knowledge of the Data Use Agreement execution include Sam Seemes (CEO), USTFCCCA staff members responsible for cross country selection analysis, and DA representatives involved in the agreement's negotiation and execution. The Data Use Agreement's purpose was to provide USTFCCCA with access to cross country results data for the specific and limited purpose of analyzing possible new at-large

selection procedures for NCAA Division I cross country individuals. This limited purpose is expressly stated in the agreement itself.

USTFCCCA is not aware of any improper disclosures or copying of DUA-protected information. USTFCCCA's use of cross country data was consistent with the agreement's stated purpose. The Data Use Agreement does not encompass, restrict, or address USTFCCCA's broader co-ownership rights in TFRRS or track and field data.

**INTERROGATORY NO. 12:** Describe the Athletic Partnership, including any exclusivity, revenue-sharing, sponsorships, and contemplated integrations of the Association's awards, rankings, or membership portals, and identify the date that partnership negotiations began and all persons involved in the negotiation.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it seeks disclosure of confidential commercial information regarding the terms of USTFCCCA's partnership with Athletic that is not relevant to the claims and defenses in this action or proportional to the needs of the case.

Subject to and without waiving the foregoing objection, USTFCCCA responds as follows: The Athletic Partnership was announced in November 2023. Persons involved in negotiations included Sam Seemes for USTFCCCA and representatives of Athletic. Specific financial and commercial terms constitute confidential business information that USTFCCCA will not voluntarily disclose. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 13:** Identify and describe each instance in which the Association, or any of its officers, employees, contractors, or agents, downloaded, exported, scraped, copied, or otherwise obtained data from TFRRS (including, without limitation, rosters, athlete identifiers, results, rankings, or related metadata). In Your description of each such instance, please include the date(s) on which the data was obtained, the type and scope of data obtained, the method by which the data was obtained (including any tools, scripts, or access credentials used), the system(s) or location(s) in which the data was stored after being obtained, including whether the data was stored in any system not owned or controlled by the Association, and the purpose for which the data was obtained.

**RESPONSE:** USTFCCCA objects to this interrogatory as overly broad, unduly burdensome, and disproportionate to the needs of the case. This interrogatory seeks a comprehensive accounting of fifteen years of USTFCCCA's use of TFRRS data in its capacity as co-owner and collaborative partner. USTFCCCA objects to this interrogatory to the extent it assumes that USTFCCCA's use of TFRRS data was wrongful or required authorization, when in fact USTFCCCA's co-ownership rights entitle it to access and use TFRRS data.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: Throughout its fifteen-year collaborative relationship with DA (2009-2023), USTFCCCA regularly accessed TFRRS data through enhanced administrative access provided by DA as part of the collaborative relationship. This access a custom Amazon S3 bucket that enabled CSV data exports and bulk data downloads that were not available to ordinary users. Data was stored on USTFCCCA's systems and used for USTFCCCA's organizational purposes as co-owner. USTFCCCA may have used third-party software applications or cloud services in the ordinary course of business.

The volume, frequency, and duration of USTFCCCA's data access over fifteen years makes it impractical to identify each specific instance. USTFCCCA's data usage was consistent, regular, and occurred with DA's knowledge and cooperation throughout the collaborative relationship. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 14:** For any data obtained from TFRRS as described in Interrogatory No. 13, please identify all persons who accessed, controlled, maintained, or used the data after it was obtained, including whether any individual (such as Tom Lewis) accessed or used the data outside the scope of official Association functions, whether any portion of the data was shared, transferred, uploaded, disclosed, or made available to Athletic (including any affiliated entity) or to any other third party, and if so, the date, recipient, and purpose of such sharing; and the purpose for which the data was accessed or shared, including whether any such use was commercial in nature or generated revenue or other economic benefit for the Association.

**RESPONSE:** USTFCCCA objects to this interrogatory as overly broad, unduly burdensome, compound, and disproportionate to the needs of the case. USTFCCCA objects to this interrogatory to the extent it assumes facts not in evidence and seeks information based on improper assumptions. USTFCCCA objects to this interrogatory to the extent it seeks confidential business information that is not relevant or proportional.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: TFRRS data was accessed and used by USTFCCCA staff members, including Tom Lewis and other personnel, in furtherance of USTFCCCA's organizational mission. All uses were within the scope of official USTFCCCA functions. USTFCCCA is a non-profit professional

organization; its use of TFRRS data served its educational and professional mission rather than commercial revenue generation. Any sharing of information with third parties, including Athletic, was undertaken in good faith based on USTFCCCA's co-ownership rights and organizational needs. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 15:** Please describe the functions and webpages that the Association accessed after it was "locked out from the administrative pages that allowed access to the data files (CSVs) that contain event, roster and performance data."

**RESPONSE:** USTFCCCA responds as follows: After FloSports terminated USTFCCCA's enhanced administrative access in late 2023, USTFCCCA retained access only to publicly available portions of the TFRRS website accessible to any internet user. USTFCCCA can view individual meet results, individual athlete results, and limited search functionality through the public-facing website. However, USTFCCCA lost its administrative access to bulk data exports and CSV file downloads. This loss of access has substantially impaired USTFCCCA's ability to fulfill its organizational mission and provide services to members. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 16:** Please describe the Association's participation or attempts to participate in the track and field results reporting market after FloSports's acquisition of DA in 2023.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it is vague and ambiguous regarding "participation" in the "track and field results reporting market" and to the extent it assumes facts not in evidence regarding USTFCCCA's market role.

Subject to and without waiving the foregoing objection, USTFCCCA responds as follows: USTFCCCA is a non-profit professional organization representing coaches, not a commercial entity "participating in a market." After FloSports' acquisition of DA in 2023 and termination of USTFCCCA's collaborative relationship, USTFCCCA sought alternative means to continue providing rankings, awards, and services to its members. This led to USTFCCCA's partnership with Athletic in November 2023. USTFCCCA's partnership with Athletic was a necessary response to FloSports' exclusionary conduct and represents USTFCCCA's effort to continue fulfilling its organizational mission after being cut off from TFRRS.

**INTERROGATORY NO. 17:** Identify the Association's damages for each claim asserted in the Complaint.

**RESPONSE:** USTFCCCA objects to this interrogatory as premature. Discovery is ongoing, and USTFCCCA is in the process of gathering information and consulting with experts to aid its evaluation and calculation of damages. USTFCCCA objects to this interrogatory to the extent it seeks information protected by the work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA responds as follows: USTFCCCA's damages include:

**Copyright Claims:**

1) USTFCCCA's share of profits and revenue derived from TFRRS as co-owner;

2) Value of USTFCCCA's co-ownership interest that has been misappropriated;

3) Statutory damages as provided by the Copyright Act; and

4) Attorney's fees and costs.

**Antitrust Claims:**

1) Harm to USTFCCCA's relationships with members, institutions, and NCAA;

2) Loss of ability to provide rankings and awards programs;

3) Injury to USTFCCCA's reputation and competitive position;

4) Economic harm from exclusion from TFRRS access;

5) Treble damages as provided by antitrust laws; and

6) Attorney's fees and costs.

USTFCCCA reserves the right to amend and supplement this response and its Rule 26(a)

disclosures as discovery proceeds and as damages calculations are completed through expert

analysis.

**INTERROGATORY NO. 18:** Identify and describe any material personnel changes,

governance issues, or public controversies involving Athletic that occurred, discussed, or

considered in connection with coach trust or participation, sponsor or institutional relationships,

or the Association's anticipated future revenues or benefits from the partnership during the term

of the Athletic Partnership. For each such matter, identify the date(s), the nature of the issue, and

any actions taken or considered by the Association in response.

**RESPONSE:** USTFCCCA objects to this interrogatory as compound, overly broad, unduly

burdensome, confusing, vague, and ambiguous. USTFCCCA objects to this interrogatory to the

extent it seeks confidential business information and information not relevant to the claims and

defenses in this action.

Subject to and without waiving the foregoing objections, USTFCCCA responds as

follows: USTFCCCA is not aware of any material issues that would be responsive to this

interrogatory. USTFCCCA's partnership with Athletic represents a standard business relationship

entered into to continue serving USTFCCCA's members after FloSports excluded USTFCCCA

from co-management of TFRRS. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

**INTERROGATORY NO. 19:** Describe all financial incentives, revenue streams, or anticipated economic benefits the Association expected to receive from the Athletic Partnership, including any benefits tied to data access, integration, migration, or replacement of TFRRS.

**RESPONSE:** USTFCCCA objects to this interrogatory to the extent it seeks disclosure of confidential commercial information that is not relevant to the claims and defenses in this action or proportional to the needs of the case.

Subject to and without waiving the foregoing objection, USTFCCCA responds as follows: The Athletic partnership includes various financial arrangements designed to support USTFCCCA's organizational mission and services to members. Specific financial terms constitute confidential business information that USTFCCCA will not voluntarily disclose. USTFCCCA's decision to partner with Athletic was driven not by financial incentive alone, but by the necessity of serving the members of the track and field community after FloSports unilaterally terminated its collaborative relationship with USTFCCCA. USTFCCCA reserves the right to amend and supplement this response as discovery proceeds and additional information becomes available.

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Please produce all documents that you reviewed in order to respond to the above interrogatories and requests for admission.

**RESPONSE:** USTFCCCA objects to this request as overly broad and unduly burdensome. This request would require USTFCCCA to identify and produce every document consulted during the

process of formulating responses to 30 Requests for Admission, 19 Interrogatories, and 46 Requests for Production. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA refers Defendants to the non-privileged documents specifically cited or referenced in its responses to interrogatories and requests for admission. USTFCCCA will produce responsive, non-privileged documents following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 2:** Please produce all documents referenced or identified in response to the above interrogatories.

**RESPONSE:** Subject to USTFCCCA's general objections, USTFCCCA will produce non-privileged documents specifically identified by name or description in responses to interrogatories following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 3:** Please produce all documents, exhibits, or pieces of evidence that the Association may or will use at trial or any deposition or hearing in this case.

**RESPONSE:** USTFCCCA objects to this request as premature. Discovery is ongoing, depositions have not yet occurred, and trial exhibits have not been identified. USTFCCCA will comply with its disclosure obligations under Federal Rule of Civil Procedure 26(a)(3) regarding trial exhibits at the appropriate time in accordance with the Court's scheduling order.

**REQUEST FOR PRODUCTION NO. 4:** Please produce all documents or communications in which the Association referenced, identified, or used DA's software prior to 2009.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks documents outside the relevant time period for this litigation. The claims and defenses at issue concern the creation and development of TFRRS beginning in 2009, not pre-2009 use of other DA software.

Subject to and without waiving the foregoing objection, USTFCCCA will conduct a reasonable search for responsive documents but notes that any such documents would have limited relevance to the collaborative creation of TFRRS beginning in 2009. USTFCCCA will produce responsive, non-privileged documents following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 5:** Please produce all documents or communications reflecting, showing, evidencing or showing that the Association conceptualized TFRRS prior to its relationship with DA in 2009.

**RESPONSE:** USTFCCCA objects to this request as misstating USTFCCCA's allegations. USTFCCCA alleges that TFRRS was collaboratively created by USTFCCCA and DA beginning in 2009, not that USTFCCCA conceptualized TFRRS in complete form prior to beginning the collaboration.

Subject to and without waiving the foregoing objection, USTFCCCA will produce responsive, non-privileged documents following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 6:** Please produce any documents or communications, whether internal, shared with DA, or with a third party, that relate to the initiation, discussion or negotiation of DA and the Association's "collaborative relationship" beginning in 2009, as described in paragraph 14 of the Complaint.

**RESPONSE:** USTFCCCA objects to this request as overly broad with respect to documents or communications that "relate to the initiation, discussion or negotiation" of the relationship over a fifteen-year period. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objection, USTFCCCA will produce responsive, non-privileged documents following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 7:** Please produce any documents or communications memorializing, relating to, or discussing the scope of DA and the Association's relationship, including the scope of the relationship discussed internally, the scope discussed and agreed upon with DA, including any financial commitments or endorsements discussed or agreed upon.

**RESPONSE:** USTFCCCA objects to this request as overly broad with respect to "relating to, or discussing the scope" of the relationship over a fifteen-year period. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 8:** Please produce the meeting notes, specification documents, email exchanges with DA, and presentations to NCAA committees referenced in paragraph 16 of the Complaint that you allege demonstrate your role in the selection, arrangement, and organization of TFRRS data.

**RESPONSE:** USTFCCCA objects to this request as overly broad as it seeks "email exchanges with DA" without any temporal limitation over a fifteen-year collaborative relationship, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality.

**REQUEST FOR PRODUCTION NO. 9:** Please produce all documents or communications reflecting, showing, evidencing, or discussing the encoding rules referenced in paragraph 50 of the Complaint.

**RESPONSE:** USTFCCCA objects to this request as overly broad as to documents or communications "reflecting, showing evidencing, or discussing" encoding rules without any temporal limitation over a fifteen-year collaborative relationship, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality.

**REQUEST FOR PRODUCTION NO. 10:** Produce all documentation referenced in paragraph 52 of the Complaint that evidences that the Association's contributions to TFRRS were fixed into tangible form.

**RESPONSE:** USTFCCCA objects to this request as overly broad as to documents showing its "contributions" to TFRRS without any temporal limitation over a fifteen-year collaborative relationship, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality.

**REQUEST FOR PRODUCTION NO. 11:** Produce all drafts and final versions of specifications, taxonomies, encoding rules, data validation protocols, classification schemes, and user interface display standards that the Association alleges it authored or co-authored.

**RESPONSE:** USTFCCCA objects to this request to the extent it may seek proprietary information or trade secrets. USTFCCCA objects to this request as overly broad with respect to "all drafts" of documents or communications without any temporal limitation over a fifteen-year collaborative relationship, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 12:** Produce all communications related to specifications, taxonomies, encoding rules, data validation protocols, classification schemes, and user interface display standards that the Association alleges it authored or co-authored.

**RESPONSE:** USTFCCCA objects to this request as duplicative of Request for Production No. 9 and overly broad. This request could encompass thousands of communications over fifteen years.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 13:** Produce all materials reflecting the manner and location in which any of the Association's contributions were fixed within TFRRS including the earliest version in which each contribution appeared and the author(s) of that version.

**RESPONSE:** USTFCCCA objects to this request as overly broad and seeking information within Defendants' possession. Defendants possess TFRRS code, databases, and version histories that would reflect implementation of USTFCCCA's contributions. USTFCCCA objects to this request to the extent it requires production of source code or technical specifications that are within Defendants' control.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 14:** Produce all prototypes, sample datasets, test scripts, test plans, and data validation protocols that the Association created or supplied to DA for use in TFRRS.

**RESPONSE:** USTFCCCA objects to this request as overly broad and assuming facts regarding the nature of USTFCCCA's contributions. USTFCCCA's contributions were primarily conceptual, organizational, and specification-based rather than consisting of executable code or technical prototypes.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, if any exist and are in USTFCCCA's possession, and subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 15:** Produce all documents identifying sources consulted or relied upon by the Association in creating alleged encoding rules, taxonomies, protocols, or data organization for TFRRS including notes reflecting how the Association adapted or deviated from such sources.

**RESPONSE:** USTFCCCA objects to this request as overly broad and seeking information not relevant to copyright co-authorship. The originality of USTFCCCA's contributions does not depend on identification of all sources consulted.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, if any exist and are in USTFCCCA's possession, and subject to reasonable limitations on scope and time period to ensure proportionality, following

entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 16:** Please produce the audit results documented and shared with DA, including any drafts or notes, that are referenced in paragraph 15 of the Complaint.

**RESPONSE:** USTFCCCA objects to this request to the extent it may seek proprietary information or trade secrets. USTFCCCA objects to this request as overly broad with respect to "drafts or notes" of documents or communications without any temporal limitation over a fifteen-year collaborative relationship, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 17:** Please produce all communications from the Association to DA or FloSports that suggest, request, describe, or approve implementation of any Association-proposed feature, rule, taxonomy, or display format for TFRRS, and any corresponding acknowledgment or confirmation of implementation from DA.

**RESPONSE:** USTFCCCA objects to this request as overly broad. This request could encompass thousands of communications over fifteen years of collaborative development, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period

to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 18:** Please produce all documents concerning copyright or intellectual-property treatment of the Association's alleged contributions, including draft or filed copyright registrations, copyright notices/legends placed on materials, proposed authorship designations, work-for-hire agreements, assignments, or licenses.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine. USTFCCCA objects to this request to the extent it may seek proprietary information or trade secrets.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, if any exist and are in USTFCCCA's possession, and subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information. Subject to and without waiving the foregoing objections, USTFCCCA is not aware of any formal copyright registrations filed by USTFCCCA for TFRRS prior to this litigation but reserves the right to amend and supplement this response as discovery progresses and new information becomes available.

**REQUEST FOR PRODUCTION NO. 19:** Please produce all documents reflecting the Association's use of collaborative workspaces with DA or FloSports including tickets, tasks, or messages that reference the Association's contributions, suggestions, audit reports, or user feedback.

**RESPONSE:** USTFCCCA objects to this request as overly broad, vague, and ambiguous with respect to documents "reflecting the use of collaborative workspaces" without any temporal limitation.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents to the extent they exist and are within USTFCCCA's possession, custody, or control, subject to reasonable limitations to ensure proportionality.

**REQUEST FOR PRODUCTION NO. 20:** Please produce all communications, documents reflecting DA or FloSports' evaluation or response to the Association's alleged contributions.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks documents within Defendants' possession, custody, and control. Defendants should possess their own internal evaluations and responses. USTFCCCA objects to this request as vague and ambiguous as to "alleged contributions" and overly broad in that it seeks an expansive category of communications and documents without any temporal limitation.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged communications from DA to USTFCCCA reflecting DA's evaluation or response to USTFCCCA's contributions, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 21:** Please produce all documents reflecting the Association's pre-2023 statements, presentations, or internal memoranda asserting or discussing the Association's alleged co-authorship or co-ownership of TFRRS, including any documents provided to NCAA, NAIA, NJCAA, conferences, or other institutions that describe the Association's alleged selection/arrangement of data elements, encoding rules, taxonomies, or display formats for TFRRS.

**RESPONSE:** USTFCCCA objects to this request to the extent it assumes that formal assertions of "co-authorship" or "co-ownership" using that specific terminology are required to establish those rights. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege.

Subject to and without waiving the foregoing objections, USTFCCCA will produce non-privileged documents that identify TFRRS as a USTFCCCA product, describe USTFCCCA's role in TFRRS creation and development, or describe USTFCCCA's contributions to TFRRS, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 22:** Please produce all documents or communications reflecting, showing, evidencing, or discussing the Association's belief or intent to be to be a joint owner or that it is a co-creator of TFRRS.

**RESPONSE:** USTFCCCA objects to this request as duplicative of Request for Production No. 21 and to the extent it seeks documents protected by attorney-client privilege and work product doctrine. USTFCCCA objects to this request as overly broad as it seeks documents or communications exchanged over the course of a fifteen-year collaborative relationship without any temporal limitation.

Subject to and without waiving the foregoing objections, USTFCCCA will produce non-privileged documents as described in response to Request for Production No. 21.

**REQUEST FOR PRODUCTION NO. 23:** Please produce all documents or communications reflecting that DA intended or believed that the Association would be a joint owner of TFRRS or the TFRRS copyright.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks documents within Defendants' possession, custody, and control regarding DA's internal beliefs and intentions. USTFCCCA objects to this request as overly broad in that it contains no temporal limitation.

Subject to and without waiving the foregoing objection, USTFCCCA will produce communications from DA to USTFCCCA that reflect DA's recognition of USTFCCCA's co-owner status or collaborative role, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 24:** Please produce all documents or communications reflecting that DA was aware or believed that the Association was a co-creator of TFRRS.

**RESPONSE:** USTFCCCA objects to this request as duplicative of Request for Production No. 23 and incorporates by reference the objections raised in response to Request for Production No. 23. Subject to and without waiving the foregoing objections, USTFCCCA responds as stated in its Response to Request for Production No. 23.

**REQUEST FOR PRODUCTION NO. 25:** Please produce any communications, documents, budgets, finance committee approvals, meeting notes, or financial records evidencing the Association's financial contributions to the development of TFRRS.

**RESPONSE:** USTFCCCA objects to this request as overly broad, vague, and ambiguous with respect to documents or communications showing "financial contributions" during a fifteen-year collaborative relationship without any temporal limitation.

Subject to and without waiving the foregoing objections,. USTFCCCA notes that its contributions to TFRRS were primarily creative and intellectual rather than financial, and that copyright co-ownership does not require financial investment.

**REQUEST FOR PRODUCTION NO. 26:** Please produce any communications, documents, budgets, finance committee approvals, meeting notes, or financial records evidencing the Association's request for or receipt of compensation for the commercial exploitation of TFRRS by DA or FloSports.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its response to Request for Production No. 25.

Subject to and without waiving the foregoing objections, USTFCCCA is not aware of documents responsive to this request. As stated in its Responses to Requests for Admission Nos. 10-11, USTFCCCA did not receive or request direct monetary payments during the collaborative relationship, as USTFCCCA derived value through non-monetary benefits and the relationship was mutually beneficial and non-adversarial.

**REQUEST FOR PRODUCTION NO. 27:** Please produce any documents or communications evidencing the Association's involvement in the development or implementation of TFRRS-XC.

**RESPONSE:** USTFCCCA objects to this request as overly broad as it could encompass thousands of communications over years of collaborative development, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce documents evidencing its involvement in TFRRS-XC development, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate

protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 28:** Please produce any documents or communications reflecting the Association's efforts to convince the NCAA to adopt TFRRS as the mandatory reporting system for collegiate track and field. Please include any presentations, meeting notes, emails, texts, memorandum, statements, analyses, and drafts thereof.

**RESPONSE:** USTFCCCA objects to this request as overly broad as it seeks documents and communications without restrictions as to author, sender, recipient, or time period and could encompass thousands of communications, many of which are already in Defendants' possession, which would be unduly burdensome and disproportionate to the needs of the case. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 29:** Please produce any communications or documents sent from the NCAA discussing or relating to the NCAA Mandate to make TFRRS the official reporting system for collegiate track and field and cross country.

**RESPONSE:** USTFCCCA objects to this request as overly broad as it seeks documents and communications without restrictions as to recipient or time period, many of which are already in Defendants' possession, which would be unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive documents, subject to reasonable limitations on scope and time period to ensure proportionality.

**REQUEST FOR PRODUCTION NO. 30:** Produce all documents and communications relating to the DUA including drafts, executed versions, communications about its scope and restrictions, and any notices, consents, or alleged breaches.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks documents within Defendants' possession, custody, and control regarding the DUA, which DA conceptualized and drafted. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA will produce responsive, non-privileged documents, subject to reasonable limitations on scope and time period to ensure proportionality, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 31:** Produce all documents and communications concerning the Athletic Partnership, including drafts, term sheets, agreements, exclusivity provisions, revenue-sharing, sponsorships, integration plans, technical roadmaps, and financial projections.

**RESPONSE:** USTFCCCA objects to this request as overly broad and seeking confidential commercial information that is not relevant to the claims and defenses in this action or proportional to the needs of the case. The specific financial and commercial terms of USTFCCCA's partnership with Athletic have minimal or no relevance to the copyright and antitrust claims at issue.

Subject to and without waiving the foregoing objections, USTFCCCA directs Defendnats to the public announcements regarding the USTFCCCA-Athletic partnership.

**REQUEST FOR PRODUCTION NO. 32:** Produce all communications with Athletic concerning TFRRS data, IDs, crosswalks, or any requests for access, export, or bulk transfers of data from TFRRS.

**RESPONSE:** USTFCCCA objects to this request as overly broad and seeking confidential business information not relevant to the claims and defenses in this action or proportional to the needs of the case. USTFCCCA objects to this request to the extent it seeks to discover USTFCCCA's confidential communications with third parties regarding its legitimate business interests.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for communications with Athletic discussing USTFCCCA's ownership claims to TFRRS or the impact of FloSports' exclusionary conduct, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 33:** Produce all communications with Athletic concerning FloSports' Acquisition of DA.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its response to Request for Production No. 32.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for communications with Athletic to the extent they discuss FloSports'

exclusionary conduct, subject to appropriate confidentiality protections and reasonable limitations to ensure proportionality, and using search terms to be agreed upon by the parties.

**REQUEST FOR PRODUCTION NO. 34:** Produce all communications with Athletic relating to the Association's loss of administrative access to TFRRS' data.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its responses to Requests for Production Nos. 32 and 33.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for responsive communications with Athletic, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 35:** Produce all communications with Athletic relating to FloSports' change from athlete-specific identifiers to meet-specific identifiers.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its responses to Requests for Production Nos. 32, 33 and 34.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for responsive communications with Athletic, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 36:** Produce all documents and communications reflecting the Association's agreement to, understanding of, or compliance with, the TFRRS Terms of Use, including any requests for permission to download, copy, reuse, or commercially exploit TFRRS data.

**RESPONSE:** USTFCCCA objects to this request as vague, ambiguous and overly broad with respect to documents and communications reflecting "understanding of, or compliance with" the Terms of Use. USTFCCCA objects to this request to the extent it assumes that USTFCCCA was bound by Terms of Use applicable to ordinary website users rather than operating as a co-owner of TFRRS.

     Subject to and without waiving the foregoing objections, USTFCCCA is not aware of documents evidencing "agreement to" Terms of Use beyond USTFCCCA's general access to the TFRRS website as co-owner and collaborative partner.

**REQUEST FOR PRODUCTION NO. 37:** Produce all documents or communications relating to instances in which the Association downloaded, exported, scraped, or otherwise obtained TFRRS data (including logs, scripts, CSVs, exports, and metadata), and any subsequent uploads or transfers to Athletic or third parties.

**RESPONSE:** USTFCCCA objects to this request as overly broad, unduly burdensome, and not proportional to the needs of the case. This request seeks comprehensive documentation of fifteen years of USTFCCCA's use of TFRRS data as co-owner and collaborative partner. USTFCCCA objects to this request to the extent it assumes that USTFCCCA's use of TFRRS data requires documentation or justification, when USTFCCCA's co-ownership rights entitle it to access and use the data.

Subject to and without waiving the foregoing objections, USTFCCCA will produce information and sample documents to demonstrate the nature of USTFCCCA's data access prior to FloSports' termination of that access, but will not attempt to produce comprehensive logs of fifteen years of data usage.

**REQUEST FOR PRODUCTION NO. 38:** Produce all documents, guides, webpages, emails, or social posts authored by the Association that reference or link to Athletic instructions for copying rosters or results from DirectAthletics/TFRRS, including "Uploading from DirectAthletics/TFRRS" materials.

**RESPONSE:** USTFCCCA objects to this request as vague, ambiguous, overly broad and unduly burdensome as it seeks all documents and communications created by USTFCCCA that reference a general, loosely-defined category of other documents or communications purportedly created by Athletic without any temporal limitation.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for responsive documents, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 39:** Produce all communications with coaches, meet directors, schools, or conferences in which the Association advised or encouraged downloading or copying data from DirectAthletics or TFRRS to Athletic.

**RESPONSE:** USTFCCCA objects to this request as vague, ambiguous and overly broad with respect to all communications between USTFCCCA and "schools" or "conferences." This request would require searching of USTFCCCA's communications with thousands of member

coaches and institutional contacts, which is disproportionate to the needs of the case.
USTFCCCA objects to this request to the extent it assumes that USTFCCCA's communications
with its members regarding legitimate exercise of its ownership rights constitute wrongful
conduct.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a
reasonable search for responsive communications, subject to reasonable limitations to ensure
proportionality and using search terms to be agreed upon by the parties, following entry of an
appropriate protective order governing the confidential treatment of sensitive and/or proprietary
commercial information.

**REQUEST FOR PRODUCTION NO. 40:** Produce all communications with Athletic
discussing the encouragement, instruction or advice of coaches, meet directors, schools,
conferences, or other TFRRS users to download or copy data from DirectAthletics or TFRRS to
Athletic.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its Response to
Request for Production No. 39 and as seeking confidential business communications with
Athletic.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a
reasonable search for responsive communications, subject to reasonable limitations to ensure
proportionality and using search terms to be agreed upon by the parties, following entry of an
appropriate protective order governing the confidential treatment of sensitive and/or proprietary
commercial information.

**REQUEST FOR PRODUCTION NO. 41:** Produce all documents and communications with the NCAA, NAIA, NJCAA, conferences, meet directors, schools, or coaches regarding any criticism, concerns, costs, or administrative burdens related to TFRRS functionality after the 2023 TFRRS Security Updates.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its response to Requests for Production Nos. 39 and 40. This request could encompass thousands of communications with diverse institutional contacts. USTFCCCA objects to the terms "criticism, concerns, costs, or administrative burdens" as vague and ambiguous.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a reasonable search for representative communications reflecting stakeholder concerns about TFRRS functionality after FloSports' implementation of the 2023 TFRRS security updates, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 42:** Produce all internal and external communications concerning the 2023 TFRRS Security Updates, including any analysis of impacts, feasibility of alternatives, and the Association's assessment of those changes.

**RESPONSE:** USTFCCCA objects to this request for the same reasons stated in its response to Requests for Production Nos. 39, 40 and 41. USTFCCCA objects to this request to the extent it seeks documents protected by attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a reasonable search for responsive, non-privileged communications, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties,

following entry of an appropriate protective order governing the confidential treatment of
sensitive and/or proprietary commercial information.

**REQUEST FOR PRODUCTION NO. 43:** Produce any documents or communications relating
to changes to the track and field results reporting market, including any analysis of the effect of
FloSports' acquisition of DA and/or the 2023 TFRRS Security Updates.

**RESPONSE:** USTFCCCA objects to this request as overly broad, vague, and ambiguous with
respect to "changes to the track and field results reporting market" without any temporal
limitation. USTFCCCA objects to this request to the extent it seeks documents protected by
attorney-client privilege and work product doctrine.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a
reasonable search for responsive communications, subject to reasonable limitations to ensure
proportionality and using search terms to be agreed upon by the parties, following entry of an
appropriate protective order governing the confidential treatment of sensitive and/or proprietary
commercial information.

**REQUEST FOR PRODUCTION NO. 44:** Produce all documents and communications
reflecting or relating to the Association's communications with the NCAA concerning
DirectAthletics, FloSports, TFRRS, data access, or data ownership.

**RESPONSE:** USTFCCCA objects to this request as vague, ambiguous and overly broad as to
documents and communications "concerning DirectAthletics, FloSports, TFRRS, data access, or
data ownership," without any temporal limitation.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a
reasonable search for responsive communications, subject to reasonable limitations to ensure
proportionality and using search terms to be agreed upon by the parties, following entry of an

appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information..

**REQUEST FOR PRODUCTION NO. 45:** Produce all communications from the Association to Athletic concerning the Association's rights, control, ownership, access, or influence over TFRRS or TFRRS data, including the date, speaker, recipient, and substance of each such statement.

**RESPONSE:** USTFCCCA objects to this request as overly broad and seeking confidential business communications that are not proportional to the needs of the case.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct a reasonable search for responsive communications, subject to reasonable limitations to ensure proportionality and using search terms to be agreed upon by the parties, following entry of an appropriate protective order governing the confidential treatment of sensitive and/or proprietary commercial information..

**REQUEST FOR PRODUCTION NO. 46:** Identify each and every communication You had with the NCAA, including but not limited NCAA committee(s), officer(s), agent(s), and/or representative(s), from 2022 to present related to DirectAthletics, FloSports, TFRRS, data access, data ownership, or the Athletic Partnership.

**RESPONSE:** USTFCCCA objects to this request to the extent it seeks "identification" of communications rather than production of documents, making it more properly an interrogatory than a request for production. USTFCCCA objects to this request as duplicative of Request for Production No. 44, and objects to this request for the same reasons stated in its response to Request for Production No. 44.

Subject to and without waiving the foregoing objections, USTFCCCA will conduct reasonable searches for responsive communications as described in response to Request for Production No. 44.

## RESERVATION OF RIGHTS

USTFCCCA reserves the right to amend and supplement, amend, or correct these responses as additional information and documents become available through the course of ongoing investigation, discovery, and preparation of this matter, consistent with the obligations imposed by the Federal Rules of Civil Procedure.

*/s/ Matthew M. McCluer*
**ALEX P. TILLING (#29686)**
**MATTHEW M. McCLUER (#33970)**
**CLAIRE A. DiMARIA (#40755)**
**Leake Andersson LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA 70163-1701
Telephone:    (504) 585-7500
Facsimile:    (504) 585-7775
Email: atilling@leakeandersson.com
        mmccluer@leakeandersson.com
        cdimaria@leakeandersson.com
***Attorneys for Plaintiff, U.S. Track & Field***
***and Cross-Country Coaches Association***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record on February 5, 2026, by hand delivery, by electronic mail and/or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

*/s/ Matthew M. McCluer*
**MATTHEW M. McCLUER**